UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x

MIGUEL MARTINEZ JR.,                          :
                                              :
                    Plaintiff,                :
                                              :      **MEMORANDUM &**
        -against-                             :      **ORDER DENYING**
                                              :      **MOTION FOR**
SALVATORE L. RICCI,                           :      **SUMMARY JUDGMENT**
                                              :
                    Defendant.                :      3:22-CV-1468 (VDO)
                                              :
                                              :
---------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

Plaintiff, Miguel "Mike" Martinez, Jr., brings a claim of excessive force in violation of

the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 against Defendant, Police

Officer, Salvatore L. Ricci. Plaintiff previously named, and later moved to dismiss, the City of

New Haven as a Defendant. Defendant moves for summary judgment under Rule 56 of the

Federal Rules of Civil Procedure, arguing: (1) Defendant's actions were objectively reasonable

under the circumstances; (2) Plaintiff's claim is barred by the doctrine of qualified immunity;

(3) the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), forecloses

Plaintiff's claim; and (4) the Plaintiff's claim pursuant to the Fourteenth Amendment fails as

a matter of law.

For the reasons set forth below, the Court **denies** Defendant's motion for summary

judgment.

## I.    BACKGROUND

### A.    Undisputed Facts

The following facts are undisputed and are based on the record, including the parties' pleadings and Local Rule 56(a) statements.[1]

On March 1, 2020, Plaintiff drove to Yale Children's Hospital, seeking medical treatment. (Def.'s 56(a) ¶ 5.) Upon arriving at the hospital, Plaintiff pulled into the valet circle and requested the attendants retrieve Lieutenant Stoudemayer from Protective Services to escort him into the hospital. (*Id.* ¶ 6.) Rather than contacting Lieutenant Stoudemayer, the attendants instead gave Plaintiff a "hard time" and called the New Haven Police Department. (*Id.* ¶ 7.)

Subsequently, Defendant and two of his colleagues, Sergeant Milton Jackson and Officer Luis Pena, responded to the scene to assist Yale Protective Services with Plaintiff. (*Id.* ¶¶ 1, 3, 10.) Upon arrival, Defendant met with a security guard, who informed him that Plaintiff was causing a disturbance and refusing to move his vehicle from the valet circle or exit the vehicle. (*Id.* ¶ 2.) Defendant approached Plaintiff, who informed him that he was angry with the security guards. (*Id.* ¶ 8.) In an attempt to get Plaintiff to exit his vehicle and enter the hospital, Defendant continued to speak with him for several minutes. (*Id.* ¶ 10.) Throughout this conversation, Defendant permitted Plaintiff to smoke a cigarette and show Defendant a cell phone video. (*Id.* ¶ 10; Pl. Ex. H, Ricci BWC, at 16:01:14–16:08:13.) During this time,

---

[1] The parties' Local Rule 56(a) statements include: Defendant's Local Rule 56(a)1 Statement of Undisputed Material Facts ("Def.'s 56(a)," ECF No. 49) and Plaintiff's Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment ("Pl.'s 56(a)," ECF No. 53).

Defendant made six verbal attempts to get Plaintiff to exit the vehicle.[2] (Pl.'s 56(a) ¶ 10; Ricci BWC at 16:01:14–16:08:13.) After several minutes, Plaintiff had still not exited his vehicle, and Defendant stated, "This is enough, come on," before reaching into the vehicle. (Pl.' s 56(a) ¶ 11; Ricci BWC at 16:09:07.) Jackson then seized Plaintiff's right arm, and Defendant seized his left arm. Plaintiff grabbed a part of Jackson's body, which Jackson indicated as his wrist, though it is not visible on any officer's body worn camera. (Pl.'s 56(a) ¶ 12; Ricci BWC at 16:09:22; Pl. Ex. J, Jackson BWC at 16:10:01.) An officer, presumably Jackson, then stated, "That hurts, Mike, I am going to hurt you back. Mike, I'm going to hurt you back if you don't let me go." (Pl.'s 56(a) ¶ 13; Def. Ex. B, Ricci Dep., 48:19–49:4; Ricci BWC at 16:09:20–16:09:29.) Defendant then struck Plaintiff in the face, during which time it is unclear whether Plaintiff still grasped Jackson's body. (Pl.'s 56(a) ¶ 15; Ricci BWC at 16:09:41–48.)

After being struck, Plaintiff resisted exiting the car because he had a medical immobilizer on his leg, could not stand properly, and was in pain. (Pl.'s 56(a) ¶ 19.) Plaintiff, however, did not inform Defendant or the other officers of his inability to stand. (*Id.*) Defendant and Jackson then backed away from the vehicle, and Defendant drew his Taser and stated, "Out right now . . . step out right now." (Pl.'s 56(a) ¶ 20; Ricci BWC at 16:10:09–30.) Subsequently, Plaintiff exited the vehicle, and Jackson placed a handcuff on Plaintiff's left wrist. (Pl.'s 56(a) ¶ 21; Pl.'s Ex. I, Pena BWC at 16:10:17.) After stepping out of the vehicle, Plaintiff grabbed the door frame with his right hand. (Pl.'s 56(a) ¶ 22; Pena BWC at 16:10:25–34; Jackson BWC at 16:11:12; Ricci BWC at 16:10:30.) Defendant then deployed his Taser,

---

[2] Specifically, Defendant made the following statements to Plaintiff: "let's go inside," "do me a favor, would you mind stepping out of the truck," "let's go inside," "is it alright if we watch this inside," and "alright, come on, let's go."

striking Plaintiff in the chest. (Pl.'s 56(a) ¶ 23.) The Taser did not appear to take effect, and Plaintiff pulled the prongs out with his hands. (*Id.* ¶ 24.) Defendant, again, struck Plaintiff in the face, and officers secured Plaintiff's hands in handcuffs and detained him. (*Id.* ¶ 25.) After detaining him, officers escorted Plaintiff into the hospital, where he received treatment for his injuries. (*Id.* ¶ 26.)

Plaintiff was charged with Assault on Public Safety Personnel in violation of General Statutes § 53a-167c and Interfering with an Officer in violation of § 53a-167a. (Pl.'s 56(a) ¶ 31.) Plaintiff pled *nolo contendere* to Interfering with an Officer and was sentenced to eleven months suspended, with two years' probation. (*Id.* 56(a) ¶ 35; Def. Ex. F.) During the plea hearing, the Judge canvassed Plaintiff, and Plaintiff agreed that he did not contest the facts on the record with respect to the charge for Interfering with an Officer. (Pl.'s 56(a) ¶ 36.)

## B.    Procedural Background

On November 17, 2022, Plaintiff commenced this action against Salvatore L. RicciJr.[3] and the City of New Haven (the "City"). (Compl., ECF No. 1.) On January 27, 2023, the City filed an answer with affirmative defenses (City of New Haven's Answer, ECF No. 18), and on January 30, 2023, Salvatore L. Ricci filed an answer with affirmative defenses (Ricci's Answer, ECF No. 22). On January 22, 2024, Plaintiff filed an amended complaint (Am. Compl., ECF No. 37), and on January 24, 2024, the City filed an answer to the amended complaint (ECF No. 38). Subsequently, on April 4, 2024, Plaintiff filed a motion to dismiss the claims against the City (Pl. Mot. To Dismiss, ECF No. 43), which this Court granted with

---

[3] Plaintiff later moved to amend the Complaint to reflect Defendant's name as "Salvatore L. Ricci," rather than "Salvatore L. Ricci Jr." (ECF No. 33), which the Court granted (ECF No. 34).

prejudice (Order Dismiss., ECF No. 44). On April 15, 2024, Defendant moved for summary judgment (Def. Mot., ECF No. 47) and filed a supporting memorandum (Def. Mem., ECF No. 47-1). On June 3, 2024, Plaintiff filed a memorandum in opposition (Pl. Mem., ECF No. 51), and Defendant filed a reply on June 24, 2024 (Def. Reply, ECF No. 55).

## II.    LEGAL STANDARD

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[4] A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *Id.* The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). However, if the non-moving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof and submits "merely colorable evidence," then summary judgment is appropriate. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). There must be evidence on which the jury reasonably could find for the non-moving party. *Dawson v. Cnty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004).

## III.   **DISCUSSION**

Defendant filed a motion for summary judgment, asserting: (1) Plaintiff's claims are barred by the doctrine of qualified immunity; (2) Plaintiff's claims are barred pursuant to *Heck*, 512 U.S. 477; (3) Defendant's actions were objectively reasonable under the circumstances; and (4) Plaintiff's claim under the Fourteenth Amendment fails because Defendant had probable cause to arrest Plaintiff.

As explained below, the Court finds that: (1) genuine issues of material fact remain as to whether Defendant's actions were objectively reasonable; (2) genuine disputes remain as to whether Plaintiff's claim is barred by the doctrine of qualified immunity; (2) Plaintiff's claim is not barred pursuant to *Heck*; and (4) Defendant misconstrues Plaintiff's claim pursuant to the Fourteenth Amendment and said claims do not fail as a matter of law.

### A.    Excessive Force

Plaintiff contends that Defendant violated his constitutional rights by using excessive force in striking Plaintiff in the face while removing him from the vehicle and deploying his Taser. (Am. Compl. ¶¶ 6–8.) Defendant, however, maintains that his "actions were objectively reasonable in light of the circumstances." (Def. Mem. at 13.) Viewing the evidence "in the light most favorable" to Plaintiff and drawing "all reasonable inferences in its favor," *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995), the Court finds that Plaintiff's excessive force claim cannot be resolved as a matter of law at this juncture.

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness' standard." *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015). A police officer's use of force is excessive if it is objectively unreasonable in light of the facts and circumstances known to the officers. *Lennon v. Miller*, 66 F.3d 416, 425–26 (2d Cir. 1995). Courts consider several factors in determining whether an officer's use of force is objectively reasonable, and application of the reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest[.]*" Graham v. Connor*, 490 U.S. 386, 396 (1989). These factors are "judged from the perspective of a reasonable officer on the scene" and courts must consider that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force necessary in a particular situation." *Id.* at 396–97.

In arguing that Defendant exercised reasonable force, Defendant relies solely on the second and third *Graham* factors, arguing that because Plaintiff was "noncompliant" and "combative," Defendant's actions were objectively reasonable. (Def. Mem. at 18.) Specifically, Defendant contends that Plaintiff was actively resisting arrest by grabbing the steering wheel and assaulting Jackson. (*Id.*) However, material factual issues exist that preclude such a finding at this stage.

First, although Defendant contends that Plaintiff ignored lawful orders to exit the vehicle, this is unsupported by the factual record. While Defendant made verbal attempts to encourage Plaintiff to exit the vehicle and enter the hospital, many of these attempts were phrased as cajoling requests, rather than orders, suggesting that they get out of the cold and asking to go inside. Additionally, although Defendant asserts that the force was reasonable to force Plaintiff to release Jackson's wrist, the parties dispute whether Plaintiff was holding Jackson's wrist when Defendant first struck him, and the video footage provided by the parties does little to resolve the dispute. (Def.'s 56(a) ¶ 15; Pl.'s 56(a) ¶ 15.) Indeed, in his deposition, Defendant conceded that he was uncertain whether Plaintiff was actively grasping Jackson during the first incident and that the video appeared to show that Plaintiff had already released Jackson. (Pl. Ex. C, Ricci Dep. at 49–56.)

Additionally, even if Plaintiff initially resisted arrest, the factual record is murky as to whether he continued to resist after Defendant first struck him, to warrant deploying a Taser and striking Plaintiff a second time. When Defendant deployed his Taser and struck Plaintiff in the face a second time, Plaintiff had already exited the vehicle and it is unclear whether he was still actively resisting or assaulting Jackson. *See Jones v. Treubig*, 963 F.3d 214, 230 (2d Cir. 2020) (concluding that a jury may reasonably determine an officer used excessive force

where the subject was no longer resisting). Thus, a reasonable jury may conclude that Plaintiff, even if he had initially posed resistance, was compliant at the time Defendant deployed his Taser and struck him in the face a second time.

Consequently, because granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officer's conduct was objectively unreasonable, the Court denies summary judgment on the grounds that Defendant's actions were objectively reasonable.

### B.      Qualified Immunity

Defendant argues that Plaintiff's claims are barred by the doctrine of qualified immunity. (Def. Mem. at 4.) Defendant contends that because qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law," Defendant is shielded from liability. (Def. Mem. at 7.) Defendant, however, fails to explain or establish how the doctrine of qualified immunity applies in this case.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). An official is entitled to qualified immunity unless (1) the facts alleged or shown by the plaintiff state a violation of a statutory or constitutional right by the official, and (2) the right was clearly established at the time of the challenged conduct. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).

Where issues of fact preclude granting summary judgment on the question of the reasonableness of force used, "[t]he same issues of fact preclude a finding that the defendants

are entitled to qualified immunity." *Gulley v. Iweka*, No. 3:14-cv-1832 (MPS), 2016 WL 4370029, at \*11 (D. Conn. Aug. 15, 2016) (citing *Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999) (issues of material fact as to excessive force claim precluded summary judgment based on a qualified immunity defense)).

As the Court has concluded in a previous section of this ruling, there are issues of fact that are in dispute as to the reasonableness of Defendant's actions. These same issues of fact preclude a finding that Defendant is entitled to qualified immunity. For example, Defendant likely would not be entitled to qualified immunity if the evidence shows that Defendant struck Plaintiff in the face while Plaintiff's hands were raised or failed to provide Plaintiff with an opportunity to comply before initiating force. *See*, *e.g.*, *Rogoz v. City of Hartford*, 796 F.3d 236, 240–41 (2d Cir. 2015) (reversing grant of immunity when officer jumped knee-first on plaintiff who had laid down on the ground with his hands behind his back); *O'Hara v. City of New York*, 570 F. App'x 21, 23 (2d Cir. 2014) (affirming denial of immunity to officer who "punched [plaintiff] in the face *without* provocation and then proceeded to punch him repeatedly after [he] fell to the ground"); *Calamia v. City of New York*, 879 F.2d 1025, 1035 (2d Cir. 1989) (holding that qualified immunity was a question for the jury where officer shoved plaintiff to the floor as soon as he answered door and cuffed him).

Defendant has not met his burden of demonstrating the absence of a genuine dispute of material fact as to qualified immunity. Accordingly, the Court denies summary judgment as to qualified immunity.

### C.    Heck v. Humphrey

Defendant further argues that Plaintiff's claims are foreclosed by the Supreme Court's holding in *Heck v. Humphrey*, because he pled guilty to interfering with a police officer. (Def.

Mem. at 7–8.) In his view, finding Defendant liable for excessive force would invalidate Plaintiff's criminal conviction for interfering with a police officer because it would challenge that Defendant was acting within his official duties, a requisite element of the criminal offense. (*Id.* at 11–13.) Plaintiff, however, correctly indicates that Defendant misconstrues the basis for Plaintiff's conviction and *Heck*'s applicability to excessive force complaints resulting from an officer's actions *after* a Plaintiff has been subdued. (Pl. Mem. at 19–21.)

In *Heck*, the Supreme Court held that a plaintiff cannot recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless he "prove[s] that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486–87. "A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Id.* at 487.

In determining whether a § 1983 claim is precluded under *Heck*, the court must "examine the relationship between the criminal conviction and each of the plaintiff's civil claims." *Jackson v. Suffolk Cnty. Homicide Bureau*, 135 F.3d 254, 256 (2d Cir. 1998). "The rule of *Heck v. Humphrey* does not ordinarily bar a claim that the police used excessive force against a civil rights plaintiff, even if the excessive force occurred in the midst of an arrest that eventually led to a successful conviction." *McKay v. East Hartford Police Dep't*, No. 3:16-cv-1954 (JAM), 2017 WL 4247383, at *3 (D. Conn. Sept. 25, 2017); *see also Jackson*, 135 F.3d at 257 (reversing dismissal of excessive force claim under section § 1983 because claim "lack[ed] the requisite relationship to the conviction"). "[U]nlike a finding that the police had no probable cause or that they engaged in an unlawful search—a finding that the police used

excessive force is collateral to the grounds for conviction and does not usually cast doubt upon the basis and admissibility of evidence used to establish a criminal conviction." *McKay*, 2017 WL 4247383, at *3. An excessive force claim is precluded by *Heck* only if the "facts actually determined in his criminal conviction that were necessary to the judgment of conviction are incompatible with the claim of excessive force being raised in the subsequent civil suit." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000).

Here, the factual grounds for Plaintiff's plea are not clearly incompatible with his claim of excessive force. Plaintiff pled *nolo contendere* to interfering with a police officer. (Pl.'s 56(a) ¶ 35.) Under Connecticut law, an individual is guilty of interfering with an officer when he "obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties." Conn. Gen. Stat. § 53a-167a. As observed by the Connecticut Supreme Court the statute has a "broad scope . . . . [I]t is apparent that the legislature intended to prohibit *any* act which would amount to meddling in or hampering the activities of the police in the performance of their duties." *State v. Aloi*, 911 A.2d 1086, 1092 (Conn. 2007) (citation omitted). The statute does not preclude a finding that an individual both interfered with an officer and was later the victim of excessive force related to the arrest. *See Sanabria v. Martins*, 568 F. Supp. 2d 220, 226 (D. Conn. 2008) (finding that a plaintiff's allegations of excessive force were not "wholly congruent with the facts determined by guilty plea"). Indeed, the statute itself specifies neither what level of interference or endangerment is necessary for a conviction nor what level of force an officer may use in response to the interference. Consequently, an individual could both interfere with an officer and also be met with an excessive force.

12

Thus, it is important to examine the record to establish whether a Plaintiff's *nolo contendere* plea for interfering with a police officer forecloses claims for excessive force.[5] In the present case, the prosecution made several factual assertions concerning the basis for Plaintiff's plea, including instances of both passive and active resistance and potential endangerment. Specifically, the prosecutor stated that Plaintiff, "refused to exit his vehicle," "allegedly grabbed [Jackson's] right wrist and bent it back,"[6] and "resisted arrest again" after exiting his vehicle. (Def. Ex. F at 4–5.) It is unclear which, if any, of those bases gave rise to Plaintiff's conviction. Indeed, these facts allow for an inference that Plaintiff may have endangered the officers by "allegedly grabb[ing Jackson's] wrist" or passively obstructed the officers by "refus[ing] to exit his vehicle." Moreover, the prosecutor's recitation of facts was limited as to the level of force necessary to subdue Plaintiff, stating only that "an officer hit [Plaintiff] twice to get him to let go [of Jackson's] wrist," while remaining silent both as to

---

[5] It is important to note that courts do not necessarily find facts upon a *nolo contendere* plea. Indeed, "a plea of *nolo contendere* is merely a declaration by the accused that he will not contest the charge, and even though followed by a finding of guilty and the imposition of a fine or other penalty, is not admissible, either as a verbal admission or an admission by conduct. Nor is it admissible to affect a party's credibility, as evidence of an arrest, or as res judicata establishing that the plaintiff was engaged in a criminal act. Pleas of nolo contendere may be entered for reasons of convenience and without much regard to guilt and collateral consequences. Even though the plea may be regarded as a tacit admission, its inconclusive and ambiguous nature dictates that it should be given no currency beyond the particular case in which it was entered." *Lawrence v. Kozlowski*, 372 A.2d 110, 115 n.4 (Conn. 1976) (citation omitted). A defendant who enters a *nolo contendere* plea is "not estopped from denying the facts to which he pleaded . . . in a subsequent judicial civil proceeding." *State v. Bridgett*, 210 A.2d 182, 184 (Conn. Cir. Ct. 1965). Regardless, it is not necessary to determine the preclusive effect of *nolo contendere* pleas here, as the prosecutor's recitation of facts to support Plaintiff's plea does not preclude Plaintiff's excessive force claims.

[6] Notably, this allegation contradicts Defendant's statements in his deposition that he was unsure whether Plaintiff was actively grasping Jackson when Defendant first struck him. (Pl. Ex. C, Ricci Dep. at 49–56.)

13

whether this level of force was necessary to subdue Plaintiff and as to the incidents of force that occurred after Plaintiff exited the vehicle. *See Methvin v. Cossette*, No. 3:11-cv-959 (JBA), 2013 WL 5740076, at *3 (D. Conn. Oct. 22, 2013) (concluding that where "the factual support for Plaintiff's guilty plea did not require an analysis of Defendant's reasonableness of the force used during his arrest," the claims were not barred by *Heck*). Accordingly, the record does not clarify what facts were necessarily determined to support Plaintiff's conviction or why those facts are incompatible with Plaintiff's claim that Defendant responded with excessive force. Consequently, Defendant's motion for summary judgment based on *Heck* is denied.

### D.    Fourteenth Amendment

Finally, Defendant contends that Plaintiff's Fourteenth Amendment claim fails as a matter of law because Plaintiff's detainment and arrest were supported by probable cause. (Def. Mem. at 19.) Defendant, however, appears to misconstrue Plaintiff's Fourteenth Amendment claim as separate from his claim of excessive force pursuant to the Fourth Amendment. Plaintiff does not allege wrongful detainment or arrest—only excessive force. (Am. Compl. at ¶ 8.) Rather, Plaintiff uses the Fourteenth Amendment as the vehicle through which to apply the Fourth Amendment's prohibition of excessive force. *See Shamir v. City of New York*, 804 F.3d 553, 557 (2d Cir. 2015) (Fourth Amendment protection against excessive force is "applicable to the states by virtue of the Fourteenth Amendment"). Accordingly, Defendant's motion for summary judgment based on the Fourteenth Amendment is denied.

## IV.    CONCLUSION

For the preceding reasons, the Court **denies** Defendant's motion for summary judgment (ECF No. 47).

**SO ORDERED.**

14

Hartford, Connecticut
January 21, 2025

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge